same," both in law and equity. Not only has the stockholder no power to enforce a claim to these profits, but the directors, where the debts exceed the clear value of the corporate funds, have no right to allow the stockholder a dollar from the profits. The very act of incorporation of the Willimantic Linen Company provides that the directors shall be personally liable for the debts of the company, if they declare and pay a dividend under such circumstances. The application of the act must be uniform, and apply as well to the stockholders of insolvent as solvent corporations, to those in debt as well as those with a surplus. It is a perfectly well-known fact in the history of business, that corporations continue to exist for years while they are in point of fact insolvent, notwithstanding they may, during some portion of the time, make large profit. This is one of the vicissitudes of pecuniary transactions. Stockholders may own the stock for a long period of years, and never receive a dollar of income from it. Is it to be supposed that congress intended to compel individuals to pay an income tax upon what they not only never receive, but never can have the power to collect? Surely a man cannot in any legal sense be said to be "entitled" to that which he neither receives nor has a right to receive. As has already been said, the object of the clauses of the law laying income tax was to collect of individuals a portion of their yearly receipts, whether in actual money or debts or rights of property which may be turned into money. The law guards those of small means, by excepting six hundred dollars of income from taxation. But if one of such should happen to hold stock in an embarrassed corporation which was making annual gains and appropriating them to the payment of its own debts, his condition would be dismal, indeed, if he were to be taxed on any considerable amount of such income. Nor is it a valid answer to say that the stock thus held is increasing in value; for, in the first place, the object of congress in laying the income tax was not to raise revenue, by taxing estates according to their value but to appropriate a portion of every one's net annual receipts and gains. In the second place, anyone acquainted with the history of corporations largely indebted is well aware that the market value of the stock often remains for a long time unaffected by a discharge of a portion of its obligations.

It may be said that the answer of the respondent in this case impliedly admits that the earnings of the linen company are surplus earnings over and above all indebtedness. This suggestion cannot vary the case. As already remarked, the application of the act must be uniform as to all corporations, whatever their pecuniary condition. The stockholders of a corporation have no individual control over the surplus corporate funds, beyond the power to prevent, by the aid of the courts, the appropriation of the funds to objects foreign to the charter. They are not, as individuals, in any legal or commercial sense entitled to the surplus funds. No stockholder can, by his individual act, separate his supposed portion of the surplus from his stock, and transfer the title thereof to another, nor sue and recover it from the corporation. This surplus, for reasons of the highest commercial policy is left to the control of the corporation, as administered by its directors for the time being, acting within the bounds of a reasonable discretion subject to the charter of the corporation itself. This rule is of the highest importance to the community, when such vast interests are committed to the control of these artificial persons. The appropriation of a portion or all of the profits of a corporation for a given year to the repair or enlargement of buildings, or to some other purpose strictly within the corporate powers, may be of vital importance to all concerned, and therefore the law commits the care of the corporate funds to the directors or trustees, or to the stockholders exercising their corporate functions, and not to the stockholders, in their individual capacity. The latter cannot therefore be said to be entitled to gains and profits, which the corporation itself has not set apart for division, but has appropriated to other lawful objects. The act of congress in question recognizes the soundness of this well-known law relating to corporations and stockholders, and requires the taxpayer to include no gains or profits of a corporation of which he may be a member, in his income list, unless he is "entitled to the same." In this view of the case it follows that the respondent Ives was not in any sense known to the law entitled to any portion of the undivided earnings of the Willimantic Linen Company, and was not bound to include it in his income return. For these reasons this motion is dismissed.

━━━

### Case No. 7,115.

In re IVES et al.

[5 Dill. 146; [1] 19 N. B. R. 97.]

Circuit Court, E. D. Missouri. March, 1879.

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

J. La Due and William R. Walker, for bankrupts.

John D. Davis, for objecting creditor, Harvey Bates.

DILLON, Circuit Judge. The decision made by the district court is supported in two opinions of an able and experienced bankruptcy judge. In re Little [Case No. 8,391], Blatchford, J.; In re Leighton [Id. 8,221], decided by the same judge. A contrary opinion was given by another very learned judge. Re Burke [Id. 2,156], Deady, J.

The question is one of considerable importance, doubtless, and I have considered it with some care; but inasmuch as the bankrupt act is now repealed, I shall dispose of it without extended argument in support of my conclusion.

The district court not only has bankruptcy jurisdiction, but is the only court of original jurisdiction in bankruptcy. The petition filed in that court by the bankrupts was in due form in every respect, and set forth all the facts as to residence and otherwise necessary to state a case within the jurisdiction of the court. An adjudication of bankruptcy on this petition was duly passed and entered. An assignee was appointed, a deed of assignment was executed, debts were proved, meetings of creditors held, and the estate administered. In due course, after the lapse of several months, the bankrupts applied for a discharge, whereupon one of the creditors, who had before proved a claim, appeared and opposed the discharge, on the ground that the court had no jurisdiction to grant it, by reason of the existence of a fact en pais, viz., want of residence· in the district for the requisite length of time before the filing of · the petition in bankruptcy.

It is my judgment that the effect of a decree of adjudication cannot be thus overcome. This objection is not among those specified in the act as grounds of opposing the discharge. Rev. St. §§ 5110, 5111. The principle decided in Michaels v. Post, 21 Wall. [88 U. S.] 398, and in Sloan v. Lewis, 22 Wall. [89 .U. S.] 150, is inconsistent with the right to attack the decree of adjudication in this manner. "Such a decree," says the supreme court in the case first cited, "is in the nature of a decree in rem as respects the status of the party, and in case the court rendering it has jurisdiction (a case within whose jurisdiction was shown by the petition filed therein), it is only assailable by a direct proceeding in a competent court, if due notice was given and the adjudication was correct in form." So in the case of Sloan v. Lewis, where the record of the bankruptcy court showed on its face jurisdiction, it was held that the adjudication of bankruptcy was conclusive in a collateral action. "Where the record (of the bankruptcy court) shows jurisdiction," says the chief justice, "an adjudication of bankruptcy can only be assailed by a direct proceeding in a competent court." 22 Wall. [89 U. S.] 157. An instance of such a direct proceeding is presented in Re Goodfellow [Case No. 5,536], Lowell, J. The decree adjudging the debtors to be bankrupt was never attacked in the district court. No petition or other direct proceeding to set the same aside was ever made. It is not attacked in the objections filed by Mr. Bates to the discharge of the bankrupts. It remains to this present time unassailed and unreversed. The estate of the bankrupts has been administered under it.

It seems to me to be against the general principles of the law relating to the effect of judgments and decrees of courts, and without any support in the special provisions of the

bankrupt act, to allow a judgment, and especially such a judgment as a decree of adjudication in bankruptcy, to be overthrown, and all that has been done under it held to be void, in a proceeding in which the decree is not directly attacked, and where the question only arises incidentally on the application of the bankrupts for their discharge.

The decisions in the district courts referred to, holding a contrary view, were made before the decisions of the supreme court above cited, and are inconsistent with them, unless it can be held that the opposition to a discharge on this ground is a direct attack upon the decree adjudging the debtors to be bankrupt—a position I cannot admit to be sound.

The order of the district court dismissing the petition for adjudication is reversed, and the court ordered to overrule the fourth specification in opposition to the discharge, and to grant the discharge of the bankrupts. Ordered accordingly.

## Case No. 7,116.

### In re IVES et al.

[18 N. B. R. (1879) 28.] 1

District Court, E. D. Michigan.

1 [Reprinted by permission.]